Buffalo Township Poor District *v.* Mifflinburg Borough Poor District, Appellant.

*Poor laws—Settlement—Master and servant.*

A settlement by hiring for a year is not lost by the fact that the servant has absented himself for a month or more from the service without the consent of the master, if the master receives the servant back and continues the payment of his wages.

Argued May 13, 1895.   Appeal, No. 40, Jan. T., 1895, by defendant from judgment of Q. S. Union Co., March Term, 1892, No. 21, on appeal from order of removal.   Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL and DEAN, JJ. Affirmed.

Appeal from order of removal.

McCLURE, P. J., found the facts to be as follows:

"1. Barbara Stees, an unmarried woman, above seventy years of age and childless, became chargeable as a pauper upon the poor district of the township of Buffalo, Union Co., Pa.

"2. An order of removal was obtained by the overseers of the poor of said district and she was removed to the borough of Mifflinburg, in said county of Union.

"3. From this order of removal the overseers of the poor of

the borough of Mifflinburg appealed on the 14th day of March, 1892, to the court of quarter sessions of Union county.

" 4. Barbara is a daughter of John Stees, was born in Limestone township, Union county, lived with him for some years, went to Jersey Shore and other places, returned home to her father's in said township and was living with him at his death in 1855.

" 5. Barbara, as described by the witnesses, is obstinate and spiteful, spunky and stubborn ; she is eccentric, of indifferent disposition, is not strong intellectually, but of sufficient mental capacity to make a contract for hire as a domestic servant. There was no change in her mental condition from 1857 to 1868, to which period this finding refers.

" 6. In the year 1857 Barbara entered into the family of John M. Taylor, then living at White Springs, in the township of Limestone aforesaid, under a verbal contract for hire as a domestic servant, she to receive fifty cents per week for her services—and remained in said service under said contract in Limestone until the spring of 1860, when Taylor and his family moved to Mifflinburg, taking Barbara with them.

" 7. On the 17th of February, 1861, the orphans' court of Union county appointed James Crossgrove trustee of the estate bequeathed to her by her father.  Crossgrove was not a trustee or committee of her person, but assuming to act as such ratified the contract then existing between Barbara and John M. Taylor (see Mrs. Taylor's answer to the 5th interrogatory) and received her wages.

" 8. Barbara did the rough work about the house of Taylor, washing, ironing, scrubbing, etc., and did not leave his service permanently until 1868.

" 9. From the spring of 1860 to the year 1868 she was in the service of Taylor in Mifflinburg as a domestic under the contract for hire.  She was, however, absent at one time several months, at her sister's (Mrs. Bolander's), at another time at Mrs. Shriner's (another sister), for several months, and made a number of visits to Samuel Stees for a day or two.  She went away without the knowledge or consent of Taylor, and he did not pay her for the weeks she was absent.

" 10. There was not a whole year during the period from 1860 to 1868 Barbara lived with Taylor that she did not go

away and stay a day or two. This happened every month or two. She went without Taylor's consent, but he always received her when she returned, and the service and pay went on as before.

" 11. Barbara was self supporting until she left Taylor's, after that she was supported by her trustee under the provisions of her father's will until the fund was exhausted in 1888, when she became a charge on Buffalo township.

" With the above findings of facts it would seem that the settlement of the pauper is not difficult of solution.

" It is contended, however, by counsel for Mifflinburg, that by reason of her mental incapacity Barbara could not acquire a settlement otherwise than by derivation from her father ; and further, that there was but a hiring by the week and that Barbara did not continue in the service of Taylor for one whole year, as required by section 9 of the act of 13th June, 1836. Barbara is not an idiot, nor can she be considered insane. While eccentric and irritable, obstinate and spiteful, she had sufficient mental caliber to make and execute a contract for hire as a domestic servant. This is conclusive of the first contention and we think the last is without foundation in law.

" Under our statute it is not necessary that the contract for hire be for a year. ·The essential element is the continuance in service for one whole year, and this may be under one or more contracts: Heidelburg v. Lynn, 5 Whart. 430; Lewistown v. Granville, 5 Barr, 283.

" That Barbara was away a day or two every month or so without the consent of her master did not terminate the service or prevent her acquiring a settlement in Mifflinburg, where the services were rendered. His taking her again under the same contract, paying her the same wages, purged the absence. In Beccles and Lewistoff, 3 Burns' Just. 447, where a man was hired as a blacksmith, and allowed by his master to work for another, the blacksmith getting the benefit of it and the master deducting by his consent the proportion of his wages for the time he was away, the court say, ' Service by the master's consent with another person is service of the master. But in this case, if it had been without the master's consent, yet the absence had been dispensed with by the master's taking him again.' The order of the sessions that no settlement was gained was quashed.

" A person hired for a year with leave of absence for a day tarried three, then returned and the master took him into his service as before.   It was objected that his staying without leave was a desertion of the service and the time he stayed away takes so much off from a complete service for a year.   But, by the court, ' This will not prevent a settlement, for the master's taking him again is a purgation of the offense, and no interruption of his service : ' Rex and Islip, 1 Strange, 423 ; 3 Burns, 448.    See also Hamburg v. Fordsburg, 3 Burns' Just. 448. ' There is no necessity of an actual service upon every day of the year.   The master can always dispense with it.   He can give leave of absence.   Nay, if the servant is absent without leave, in the middle part of his year, such absence may be purged, as it has been termed, by the master receiving him again ; that is, the subsequent consent of the master ratifies the action done.'   Lord MANSFIELD in St Margaret's Westminster and Richmond Burrows, Sec. Cross, 780, 3 Burns, 455.

" We are accordingly of the opinion that there was a contract for hire as a servant and a continuance in such service for one whole year within the meaning of the statute.   It follows that a settlement was thereby gained by Barbara in Mifflinburg, and that the order of removal must be confirmed.

" Sept. 8, 1894, it is ordered that the appeal be dismissed and the order of removal confirmed, and it is further ordered, adjudged and decreed that the overseers of the poor of the borough of Mifflinburg pay the costs of this proceeding, and pay to the overseers of the poor of the township of Buffalo their reasonable charges for the support and maintenance of the pauper."

*Error assigned* among others was above order.

*Samuel H. Orwig, Joseph C. Bucher* with him, for appellant. —There must be a hiring for a year and service for that period to give a settlement: Heidleburg v. Lynn, 5 Whart. 430 ; Lewistown v. Granville, 5 Pa. 283 ; Shippen v. Gaines, 17 Pa. 38.

*J. M. Linn, P. B. Linn* with him, for appellee.—The hiring need not be for a year.   It is sufficient if the service be for a year under contract of hiring : Briar Creek Twp. v. Mount

Pleasant Twp., 8 Watts, 431.  Absence may be purged by the master taking the servant back again: Beccles v. Lowistoft, 3 Burns' Just. 447; St. Margaret's Westminster and Richmond Burrows, 3 Burns' Just. 454; Hamburg v. Fordsburg, 3 Burns' Just. 447; Byberry v. Oxford, 2 Ashmead, 9; Fayette Twp. Overseers v. Fermanagh Twp. Overseers, 11 Pa. C. C. Rep. 70. The court should have been asked to answer the points submitted: Cambria County v. Madison Twp., 138 Pa. 109; Lower Augusta v. Selinsgrove, 64 Pa. 166; Montoursville Borough v. Fairfield, 112 Pa. 99; Warsaw Twp. v. Knox Twp., 107 Pa. 301.

PER CURIAM, May 27, 1895:

A careful examination of the record in this case has failed to convince us that there is any substantial error in the learned judge's findings of fact or in his conclusions of law.  There is nothing in either of the twenty-two specifications of error that requires discussion.  For reasons given by the learned president of the court below the decree should be sustained.

Decree affirmed and appeal dismissed with costs to be paid by the appellant.